**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL S. ZUMMER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. 22-cv-3505 (JMC) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael S. Zummer requested records from Defendant, the United States Department of Justice (DOJ), under the Freedom of Information Act (FOIA). After reviewing Zummer's requests, the DOJ responded that it would not conduct a search for any records because it had concluded that the documents sought—which pertain in part to the criminal investigation of former Louisiana District Attorney Harry J. Morel, Jr.—are categorically exempt from production under FOIA Exemptions 6 and 7(C). Zummer sued and the Parties cross-moved for summary judgment.

Because the DOJ has not shown that the records requested by Zummer are characteristically exempted, the Court will **DENY** the DOJ's motion. Accordingly, the Court will **GRANT** Zummer's motion in part and order the DOJ to search for responsive records. But the Court will **DENY** his request to enjoin the DOJ from withholding agency records and to order the production of any records it withheld because that request is premature. The DOJ is ordered to

conduct searches for Zummer's requested documents and only withhold those records for which non-segregable privacy interests legitimately outweigh the public interest in disclosure.[1]

## I. BACKGROUND

In considering a summary judgment motion, the Court draws all reasonable inferences in favor of the nonmoving party. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). When two parties file cross-motions for summary judgment, these favorable inferences switch between the parties as each cross-motion is considered. *Petworth Holdings, LLC v. District of Columbia*, 531 F. Supp. 3d 271, 277 (D.D.C. 2021). Here, the following facts are either undisputed or are immaterial to the resolution of the cross-motions, so the Court presents them for context only.

Plaintiff Michael S. Zummer is a former Federal Bureau of Investigation (FBI) special agent who investigated public corruption. ECF 15-3 ¶ 2. Beginning in 2009, he was assigned to investigate potential misconduct allegedly undertaken by a former Louisiana District Attorney, Harry J. Morel, Jr. *Id.* ¶¶ 5, 7; ECF 19-2 ¶¶ 1, 3. Zummer asserts that over the course of his investigation, significant evidence of Morel's wrongdoing was discovered, including evidence of rampant sexual abuse. ECF 19-2 ¶ 22. Details that have been made public lend some credence to Zummer's assertions—for instance, the local Sheriff's Office publicly released a presentation which contained highly specific details about sexually abusive actions that Morel had allegedly taken. *Id.* ¶ 43; ECF 15-3 at 46–132. In addition, the Special Agent in Charge of the FBI's New Orleans Division stated openly at a press conference that investigation into Morel's conduct had revealed "more than twenty victims spanning twenty years" and that Morel was "nothing short of a sexual predator." ECF 19-2 ¶ 34.

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

But the Department of Justice never prosecuted Morel for sex crimes. Instead, in 2016, the U.S. Attorney's Office reached a plea deal with Morel, through which Morel would plead guilty to one count of harassing a witness in violation of 18 U.S.C. § 1512(d). ECF 19-2 ¶ 28. Convictions under that statute carry a maximum penalty of three years' imprisonment. 18 U.S.C. § 1512(d).

To Zummer's eyes, this seemed like a miscarriage of justice. And Zummer had theories as to why this purported miscarriage might have occurred. Zummer claims that he learned—both in the years before and after the plea deal—that certain DOJ attorneys assigned to prosecute Morel had what Zummer considered to be conflicts of interest. Some of these alleged conflicts could be described as tenuous. *See, e.g.*, ECF 15-1 at 8, 34–35; ECF 19-2 ¶¶ 26–27 (asserting that Assistant U.S. Attorney who worked on plea deal had siblings who had personal or political ties with Morel or Morel's counsel). Others, however, might cause an observer to raise an eyebrow. For instance, Zummer asserts (and provides evidence) that one DOJ attorney who was associated with the Morel case co-owned property with Morel's defense attorney. ECF 19-2 ¶¶ 13–14, 62. Zummer also states via sworn declaration that after the DOJ's Office of the Inspector General began investigating this potential conflict of interest, that DOJ attorney transferred his portion of the co-owned property to his girlfriend at a steep discount. *Id.* ¶¶ 16–18; ECF 15-3 ¶¶ 32–36.

Zummer's next step, then, was to find out why the DOJ had authorized the plea deal that it did. So Zummer made FOIA requests to the DOJ. These requests sought DOJ case records pertaining to Morel, as well as documentation by (and correspondence between) DOJ attorneys who discussed the prosecution of Morel. ECF 15-2 ¶ 1; ECF 12 at 7–9. The DOJ declined to conduct searches for any records on the basis of two FOIA exemptions: Exemption 6 and Exemption 7(C). ECF 15-2 ¶¶ 2, 4. This lawsuit and the present motions followed.

## II. LEGAL STANDARD

The Freedom of Information Act "charges federal agencies with disclosing agency records, upon request, unless one of nine statutory exemptions applies." *Rudometkin v. United States*, 140 F.4th 480, 487 (D.C. Cir. 2025). "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions, typically through affidavit or declaration." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). "Summary judgment is warranted based on the agency's affidavit if it describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Id.* If the agency's declarations fail to "demonstrat[e] that material withheld is logically within the domain of the exemption claimed," summary judgment should be denied. *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 160 (D.C. Cir. 2023).

## III. ANALYSIS

The DOJ's refusal to search for records was legally improper. While Morel's privacy interests in the requested records are not *de minimis*, they are cabined by the fact that much of the information about Morel's investigation has already been made public. Further, Zummer has articulated a legitimate public interest in disclosing the records. In total, then, while it is possible that Morel's privacy interests in *some* records could outweigh the public interest in disclosure, the DOJ has not sufficiently shown that all of the records Zummer seeks are characteristically exempt under Exemptions 6 and 7(C) such that it should not even be required to conduct a search for potentially responsive records.

**A. The Exemption 7(C) Balancing Test**

FOIA Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C) allows an agency to withhold "records or information compiled for law enforcement purposes" if such records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7). Exemption 7(C) is "somewhat broader" than Exemption 6. *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989)). That is because a document whose disclosure would constitute a "clearly unwarranted invasion" of privacy under Exemption 6 is, by definition, also a document whose disclosure "could reasonably be expected to constitute an unwarranted invasion" of privacy under Exemption 7(C). *See id.* Thus, so long as the precondition for invoking Exemption 7(C)—that the records be compiled for law enforcement purposes—is satisfied, a court "[has] no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.*

The Parties here agree that the records sought were compiled for law enforcement purposes. ECF 12 at 14; ECF 15-1 at 16. The Court's analysis therefore looks only to Exemption 7(C).

Because Exemption 7(C) applies only to records whose disclosure could reasonably be expected to result in an "unwarranted" invasion of personal privacy, an agency may withhold records only if it "find[s] that the privacy interests at stake outweigh any public interest in disclosure." *Brown v. FBI*, 143 F.4th 481, 486 (D.C. Cir. 2025). In determining whether Exemption 7(C) applies, then, a court must "balance" privacy interests against the public interest

in disclosure. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004). Where privacy interests win out, an agency is permitted to withhold a record. *See, e.g.*, *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-cv-2201, 2022 WL 4182189, at *11 (D.D.C. Sep. 13, 2022). But where the public interest in disclosure outweighs implicated privacy interests, Exemption 7(C) provides no shelter to the agency. *See, e.g.*, *Am. Immigr. Council v. U.S. Customs & Border Patrol*, 590 F. Supp. 3d 306, 340 (D.D.C. 2022).

Since this balancing test is inherently fact-specific, it is conceivable that certain records requests will seek some documents that fall on one side of the scale (i.e., documents that implicate serious privacy interests and can be withheld) while also seeking documents that fall on the other side of the scale (i.e., documents with minimal privacy interest implications whose production is in the public interest). In those situations, an agency must search for the requested records and separate the records that can be withheld from those that cannot. *See, e.g.*, *Citizens for Resp. & Ethics in Wash. v. DOJ*, No. 24-cv-2416, 2025 WL 2206945, at *4 (D.D.C. Aug. 4, 2025). But sometimes, the very nature of the records request can lead an agency to conclude that *all* records sought would "characteristically" implicate privacy interests that outweigh the public interest, such that the agency would have no obligation to disclose any of the responsive records. *See Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995); *see also Reps. Comm.*, 489 U.S. at 776; *Citizens for Resp. & Ethics in Wash. v. DOJ* (*CREW*), 746 F.3d 1082, 1095 (D.C. Cir. 2014). In those situations, an agency can properly refuse to even search for records, since any search would only result in the agency finding records that it could choose to withhold. *See Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Here, the DOJ claims that this sort of categorical exemption applies. *See* ECF 12 at 20 (arguing that DOJ had no obligation to search because "all of the information [Zummer] seeks is

protected from disclosure" under Exemption 7(C)). To determine whether the DOJ had legal basis for its refusal to search for records, the Court must consider the privacy interests and public interests implicated by disclosure and determine whether that balance "characteristically" tips toward the privacy side. *CREW*, 746 F.3d at 1095.

**B. Privacy Interests**

The first question in the 7(C) analysis is whether there are privacy interests at stake, and if so, how heavily the Court should weigh those interests. *See CREW*, 746 F.3d at 1091. The only privacy interest the DOJ invokes is the privacy interest belonging to Morel. ECF 12 at 11. The DOJ first argues that Morel has a privacy interest simply by virtue of having his name in law enforcement files. *Id.* at 15. Indeed, the DOJ says, the fact that an individual is even "mention[ed]" in a law enforcement record can carry a "stigmatizing connotation." *Id.* at 15 (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990)).

It is true that a person who is implicated in a criminal investigation "[has] a substantial interest in seeing that their participation remains secret." *Fitzgibbon*, 911 F.2d at 767. But of course, Morel's participation in an FBI investigation is *not* a secret, a fact Zummer is quick to point out. ECF 15-1 at 18. Morel pled guilty as a result of the investigation against him, a fact that the DOJ itself touted at the time. ECF 19-2 ¶¶ 28–36. And the DOJ concedes here that the government has "publicly acknowledged" the fact that Morel was investigated and charged by federal law enforcement. ECF 12 at 17.[2]

[2] For clarity, the Court notes that the DOJ has not disputed: (1) that at the time of Morel's plea, the DOJ publicly filed a factual basis for the plea which stated that Morel solicited sex from multiple individuals and used his position as District Attorney to benefit those people, ECF 19-2 ¶ 29; (2) that the DOJ held a press conference during which the U.S. Attorney stated that Morel "perverted his position of power to take sexual advantage of desperate women . . . over and over again," *id.* ¶ 33; (3) that at that same press conference, an FBI official stated that Morel is a "sexual predator" who "prey[ed] on" more than "twenty victims," *id.* ¶¶ 34–35; and (4) that the Saint Charles Parish Sheriff's Office publicly released a slideshow detailing multiple specific instances of Morel's alleged sexual abuse, *id.* ¶ 43; *see also* ECF 15-3 at 46–132 (slideshow).

That is a problem for the DOJ. Public statements about Morel "undoubtedly . . . diminish his interest in privacy: The public already knows who he is, what he was accused of, and that he received a relatively mild sanction." *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998); *see also CREW*, 746 F.3d at 1092 ("[A person's] obvious privacy interest in keeping secret the fact that he was the subject of an FBI investigation was diminished by [a] well-publicized announcement of that very fact."). Morel's privacy interest in keeping the records secret is thus not as substantial as the interest of a person whose involvement in an investigation is unknown to the public.

But the DOJ goes on to note, correctly, that even if a person has a reduced interest "in keeping secret the *fact* that he was under investigation," that person still retains "a second, distinct privacy interest in the *contents* of the investigative files." *CREW*, 746 F.3d at 1092 (emphasis in original); *see also* ECF 12 at 17. It is not hard to see why: A person publicly convicted of a crime has little to complain about when the DOJ releases documents confirming the simple fact of that conviction. But if the underlying *details* of that conviction are not public, that same person would understandably be quite upset if the DOJ started handing out records containing all the salacious nitty-gritty that the public was previously unaware of. These concerns are even more acute in situations where disclosed records may contain details that do not underly the conviction at all, but instead tie to other alleged crimes with which the person was never charged. *See Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 214 F. Supp. 3d 43, 59 (D.D.C. 2016), *aff'd*, 876 F.3d 346 (D.C. Cir. 2017).

The DOJ makes this same argument about Morel: Even if the public knows about Morel's conviction, they might not know about all of his alleged wrongdoing—alleged wrongdoing which did not result in a conviction or even the filing of charges aside from the § 1512(d) charge. ECF 18 at 7–9. But Zummer disputes this as a factual matter. He argues that any of Morel's remaining privacy interests are "*de minimis*" because of "the sheer volume of information about [Morel's] wrongdoing that has already been publicized." ECF 15-1 at 17 n.2. Zummer highlights the fact that the most "intrusive" allegations against Morel—that he was a "sexual predator"—have already been verified in modest detail by the DOJ's press remarks and in harrowing narrative form by public reporting and Louisiana state records. *Id.* at 19–25. This, Zummer says, means that even the privacy interest that Morel has in the "contents" of the FBI's investigative files is "severely limited." *Id.* at 19.

Having not seen any of the requested records, the Court cannot definitively determine the extent of Morel's privacy interest in preventing disclosure of those records. But the Court does agree with Zummer that it is possible, or perhaps even likely, that Morel has a reduced privacy interest given that much of the information about his case is already publicly available. The D.C. Circuit has repeatedly made clear that publication of information about a person reduces their privacy interest in keeping the same information out of FOIA productions. *See CREW*, 746 F.3d at 1092; *see also Nation Mag.*, 71 F.3d at 896 (noting that, where politician had made multiple "public statements" about his conduct, redacting that politician's name from "files that involve the subject matter of those disclosures . . . would not serve any useful purpose in protecting his privacy"); *Bartko v. DOJ*, 898 F.3d 51, 69 (D.C. Cir. 2018) ("[T]he allegations of misconduct . . . are already a matter of public record . . . . Any interest [the person involved] might have had in keeping his name in the free-and-clear has already largely evaporated."). While a person convicted

of a crime does retain a distinct privacy interest in keeping the details underlying that conviction out of the public eye, that distinction matters little when both the fact of the conviction and the details underlying it are already well-known to the public.

To be certain, the Court agrees with the DOJ that Morel has not "waived" his privacy interest in any of the contents of the responsive files, even contents that might be publicly known. *See* ECF 12 at 17. But privacy interests can be diminished even without being waived entirely. The authorities the DOJ itself cites make this clear. For instance, in *Dow Jones & Co. v. DOJ* (cited by the DOJ in ECF 12 at 17), the court explained that "prior disclosures . . . which revealed that [a person] was the subject of a criminal investigation and the general contours of the investigation, [did] not totally destroy [that person's] privacy interests." 724 F. Supp. 985, 990 (D.D.C. 1989). However, the *Dow Jones* court went on to determine that "the public interest in further disclosure . . . outweigh[ed] the privacy interests of [the subject]," noting that the "prior disclosure" of the relevant information contributed to the limiting of the subject's privacy interest. *Id.* at 991. Likewise, the court in *Kimberlin* (cited by the DOJ in ECF 12 at 17) confirmed that a subject does not "waive all his interest in keeping the contents of the [investigative] file confidential" when the "investigation" and its "conclusion" have become public knowledge. 139 F.3d at 949. But in the following paragraph, the *Kimberlin* court made clear that publication of details related to an investigation "undoubtedly does diminish [a subject's] interest in privacy." *Id.* It is therefore the case that Morel's privacy interest in at least some of the requested files could be cabined by virtue of past disclosures, without having been waived altogether.

In any case, the most important factor distinguishing this case from *Kimberlin* is its posture. In *Kimberlin*, the defendant agency searched for records, after which the agency produced a *Vaughn* index indicating that certain records would be withheld under Exemption 7(C). 139 F.3d

at 950. The district court then reviewed some of those withheld records *in camera*. *Id.* As a result, at the time the *Kimberlin* opinion was written, both the agency and the court knew what the relevant documents contained and why those documents were or were not FOIA-exempt. *Id.* The D.C. Circuit thus had a good basis on which to agree with the district court's determination that some of the requested information would fall within Exemption 7(C).

That is not the case here. Neither the agency nor the Court know exactly what the files requested by Zummer contain. *See generally* ECF 12-2 (agency declaration); ECF 12-3 (same).[3] And since (given the undisputed evidence) it is conceivable to the Court that some of the requested files contain only information about Morel that is already public, the Court cannot conclude that all of the records requested "characteristically" implicate a strong privacy interest. *Nation Mag.*, 71 F.3d at 893. If there are responsive records that contain only information about Morel that is already widely known, then Morel's privacy interest in preventing disclosure of those records would be relatively weak. And indeed, this privacy interest could be weaker still given that the DOJ could potentially redact sensitive information about Morel from any responsive files, a solution Zummer says he likely would "not dispute." ECF 20 at 11.

**C. Public Interest**

On the other side of the scale, the Court agrees with Zummer that there is a substantial public interest in disclosure here. In cases such as this one, "the only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their

[3] The Court is conscious of its obligation to afford a presumption of good faith to the agency's affidavits. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Indeed, the Court here has no reason to believe that the agency's affidavits were not submitted in good faith. Rather, the Court simply concludes that because the agency's affidavits do not state that the requested records contain substantial nonpublic information about Morel, the Court is unable to rule that the balance here "characteristically" tips in favor of withholding.

government is up to." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (quoting *Reps. Comm.*, 489 U.S. at 773); *see also CREW*, 746 F.3d at 1093. This is precisely the public interest that Zummer invokes. Zummer does not want to shine a light on Morel or his conduct; rather, Zummer's records request is aimed at revealing what factors played a role in the DOJ's prosecutorial decisions related to the Morel case. *See* ECF 15-1 at 26.

This exact sort of interest was considered by the D.C. Circuit in *CREW*. There, the party who held the privacy interest was Tom DeLay, a former Majority Leader of the House of Representatives who had been obliquely implicated in a public corruption scandal. 746 F.3d at 1087. Although the FBI investigated DeLay (a fact which DeLay publicized), the DOJ ultimately declined to bring criminal charges against him. *Id.* The plaintiff, a nonprofit, then made a FOIA claim for "various types of documents related to the FBI's investigation of DeLay." *Id.* The DOJ categorically refused to provide any records, citing, among other exemptions, Exemption 7(C). *Id.* at 1090. The district court ruled for the DOJ, stating that the public interest in the records was "minimal." *Id.*

The Circuit reversed. It held that the records sought pertained to "matters of substantive law enforcement policy." *Id.* at 1093 (quoting *Reps. Comm.*, 489 U.S. at 766 n.18). That was because disclosure of those records "would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches." *Id.* The Circuit then noted that it had "repeatedly recognized a public interest in the manner in which the DOJ carries out [such] substantive law enforcement policy." *Id.* (collecting cases). Thus, the Circuit said, there was "a significant public interest to be weighed" in favor of disclosure. *Id.* at 1095.

Here, too, the records Zummer seeks "would likely reveal much" about "the DOJ's exercise of its prosecutorial discretion," including whether the DOJ "had the evidence" to charge Morel with more than just harassment of a witness but instead chose to "pull[] its punches." *Id.* at 1093. Zummer's requests therefore pertain to matters of "substantive law enforcement policy." *Id.* That suffices as a cognizable public interest under *CREW*.

The DOJ counters that the interest balancing here should be governed by *National Archives & Records Administration v. Favish*, 541 U.S. 157 (2004). ECF 12 at 18. There, the Supreme Court held that "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." 541 U.S. at 174. The D.C. Circuit has similarly held that "when governmental misconduct is alleged as the justification for disclosure, the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity." *McCutchen v. U.S. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 189 (D.C. Cir. 1994). Without compelling evidence of misconduct, the DOJ argues, Zummer is left with little to no public interest on his side.

But the *CREW* court already faced this argument and rejected it. As the Circuit explained, the only public interest invoked in *Favish* was a desire to show that government officials acted negligently or improperly. *CREW*, 746 F.3d at 1094–95. When a FOIA requester hangs their hat solely on that particular public interest, they are required to come forth with evidence of the purported negligence or malfeasance. *Favish*, 541 U.S. at 174. But in this case—as in *CREW*—the public interest involved is not just an interest in exposing negligence or malfeasance on the part of the DOJ. Rather, Zummer invokes an interest in examining "matters of substantive law

enforcement policy." *CREW*, 746 F.3d at 1095; *see* ECF 15-1 at 27; ECF 20 at 11 (noting that Zummer "seeks [information] about DOJ's prosecutorial decisions"). In cases where the requested records would shed light on matters of substantive law enforcement policy, the requester bears no burden of production. *See CREW*, 746 F.3d at 1094–95.

True enough, Zummer seems to imply that the decision not to throw the book at Morel could have been due in part to prosecutorial malfeasance. *See* ECF 15-1 at 5–13, 39. But "[w]hether government impropriety might be exposed" through Zummer's FOIA request "is beside the point." *CREW*, 746 F.3d at 1095. What matters is that the records, if disclosed, would provide information on "the manner in which the DOJ carries out substantive law enforcement policy." *Id.* at 1093.

To provide one example: The records Zummer seeks could conceivably show that DOJ attorneys were hesitant to prosecute Morel for sex crimes because their supervisors had instructed them that sex crime cases were a low priority for the Department.[4] If that were the case, those records would not be evidence of negligence or malfeasance. Indeed, those records would directly contradict some of Zummer's more hot-button theories about the DOJ's motivations in the Morel case (e.g., that DOJ attorneys reduced charges because a DOJ attorney had a personal connection with Morel's defense counsel). ECF 15-1 at 30–31. But those records *would* speak to a matter of substantive law enforcement policy: They would "reveal much" about the "DOJ's exercise of its prosecutorial discretion." *CREW*, 746 F.3d at 1093. That is a matter of significant public interest, even if it does not inherently reflect negligence or malfeasance.

[4] The Court, of course, has not seen any of the requested documents and offers this example only for hypothetical purposes.

Zummer thus has no need to satisfy any burden of production, having sufficiently invoked the substantial public interest in shedding light on matters of substantive law enforcement policy.

In any event, the Court is not convinced that Zummer would fail to satisfy the *Favish* evidentiary standard, were that case to govern here. Under *Favish*, a requester must produce "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. While this burden cannot be satisfied with only a "bare suspicion" of wrongdoing, it can be satisfied with something "less" than "clear evidence." *Id.* The record Zummer has produced here likely meets that threshold. *See United States v. Morel*, No. 16-cr-50 (E.D. La. Sep. 15, 2016), ECF 45, at 3 (federal judge describing Zummer's "concerns . . . that the Department of Justice is either unable or unwilling to self-police lapses of ethics, professionalism and truthfulness in its ranks" as "legitimate"); *see also* ECF 20 at 17 (citing same).

**D. Balancing**

For the reasons discussed above, the Court is of the opinion that, for at least some of the records requested, Morel's privacy interests may be limited, while the public interest in disclosure is both cognizable and substantial. The Court therefore cannot conclude, as the DOJ argues, that the balance between these interests "characteristically" tips in favor of withholding. *CREW*, 746 F.3d at 1095; *Reps. Comm.*, 489 U.S. at 776. As a result, the DOJ cannot categorically refuse to search for responsive documents.

To be clear, the Court does not hold that none of the records requested by Zummer are exempted under 7(C). Indeed, the Court cannot know whether the Exemption actually applies to any particular record because neither the Court nor either Party has seen any of the records that are responsive to Zummer's requests. All the Court holds here is that the DOJ's categorical refusal to search for records is inappropriate under these circumstances. *See CREW*, 746 F.3d at 1096;

*Citizens for Resp. & Ethics in Wash. v. DOJ*, No. 24-cv-2416, 2025 WL 2206945, at *4 (D.D.C. Aug. 4, 2025). The DOJ should conduct searches for responsive records and provide sufficient descriptions of records for which it claims exemption to allow for adjudication of whether Exemption 7(C) properly applies. *See ACLU v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013) ("With the failure of the CIA's [categorical] response, the case must now proceed to the filing of a *Vaughn* index or other description of the kind of documents the Agency possesses, followed by litigation regarding whether the exemptions apply to those documents."). Should the DOJ find responsive records that it believes would be exempted under 7(C), the DOJ is reminded of its responsibility to (1) "consider whether partial disclosure of information is possible" and "take reasonable steps to release any segregable, non-exempt information," and (2) produce the exempted record in any case if it cannot be reasonably foreseen that disclosure of the record would "harm an interest protected by an exemption." *See Rudometkin*, 140 F.4th at 487.

* * *

For the foregoing reasons, the DOJ's motion for summary judgment, ECF 12, is **DENIED**. Zummer's cross-motion for summary judgment, ECF 15, is **GRANTED in part and DENIED in part**. The Parties are **ORDERED** to meet, confer, and file a joint status report by November 16, 2026, informing the Court of a proposed schedule for next steps in this case.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: September 15, 2026